UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

RICHARD SHARIF,                        )
                                       )
              Plaintiff/Appellant,     )
                                       )
       v.                              )          21 C 3500
                                       )
HORACE FOX, JR., et al.,               )
                                       )
              Defendants/Appellees.    )

## MEMORANDUM OPINION

**CHARLES P. KOCORAS, District Judge:**

Richard Sharif, representing himself, appeals a bankruptcy judge's order

dismissing his amended adversarial complaint ("amended complaint") and imposing

sanctions in Bankruptcy Adversary Case No. 20-A-00399.  For the following reasons,

the Court affirms the bankruptcy court's order.

## BACKGROUND

As recounted by the bankruptcy court, this matter has its roots in a contract action

litigated in the United States District Court for the Northern District of Texas.  Sharif

and others sued Wellness International Network, Ltd. and Ralph and Cathy Oats

(collectively, "Wellness") alleging fraud and violations of the Racketeer Influenced &

Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c).  Sharif failed to comply

with his discovery obligations; the district court granted summary judgment in favor of

Wellness.  The Fifth Circuit Court of Appeals affirmed, observing that the litigation

was pursued for purposes of harassment or delay. *Sharif v. Wellness Int'l, Network, Ltd.*, 273 F. App'x 316, 317 (5th Cir. 2008). Sanctions were imposed on remand. *Sharif v. Wellness Int'l Network, Ltd.*, 2008 WL 2885186, at *4 (N.D. Tex. July 22, 2008). For additional background information, see *In re Sharif*, 549 B.R. 485 (Bankr. N.D. Ill. 2016).

In this action, Sharif appeals the bankruptcy court's dismissal of his amended complaint and imposition of sanctions. In his amended complaint, Sharif alleges that Defendants are civilly liable to him for violations of RICO, breach of fiduciary duty, negligence, and conspiracy.

Sharif is the debtor in the bankruptcy proceeding, Case No. 09-05868, which has been pending in the United States Bankruptcy Court for the Northern District of Illinois since February 2009. The bankruptcy court appointed Horace Fox, Jr. as trustee of Sharif's bankruptcy estate, and Fox retained Bruce de'Medici and Bradley Block as his counsel. Aurthur Newman is the court-appointed child representative in the ongoing litigation between Luma Hambaroush-Sharif ("Luma"), Sharif's estranged wife, and Sharif in the Domestic Relations Division of the Circuit Court of Cook County. Jonathan Anderson is Luma's attorney in that litigation.

The amended complaint generally alleges that Defendants "conspired" to "fraudulently" seize assets belonging to the Soad Wattar Revocable Living Trust ("Soad Wattar Trust") and transfer them to Sharif's bankruptcy estate, including life insurance proceeds and real property. More specifically, Sharif alleges that in 1992, he was

2

appointed trustee of the Soad Wattar Trust. Sharif claims that the home located at 36 Revere Drive in South Barrington, Illinois (the "South Barrington Property") is an asset of the Soad Wattar Trust. On July 23, 2007, Sharif's mother, Soad Wattar, revoked Sharif's appointment as trustee and named Sharif's sister as the trustee. Sharif alleges that upon Wattar's death in March 2010, Defendants fraudulently seized $600,000 of exempt life insurance proceeds. Sharif claims Fox and his counsel knew or should have known that the insurance proceeds were not a part of the bankruptcy estate.

On July 14, 2016, Luma filed for divorce in the Circuit Court of Cook County, alleging that the Soad Wattar Trust and other properties, including the South Barrington Property, were marital property. That domestic relations case remains pending. Sharif alleges Fox, de'Medici, and Block conspired with Luma to allow her to stay in the South Barrington Property in exchange for false testimony in a remand hearing. According to Sharif, Luma should have been paying the bankruptcy estate rent and, in furtherance of the conspiracy, Fox allowed Luma to stay in the house even though she was not a creditor and the house was not a marital asset. Sharif claims Fox and his attorneys negligently and intentionally failed to inspect the South Barrington Property until August 2010.[1]

Sharif alleges that Newman sought payment of fees for representing the children as the court-appointed child's representative in the domestic relations litigation from

---

[1] Sharif specifically alleges Defendants failed to inspect the property "for ten (10) years after the filing of bankruptcy, or until August 2010." Am. Compl., ¶ 28. However, since the bankruptcy case was initiated in 2009, this assertion cannot be true.

funds in Sharif's bankruptcy estate. Sharif further alleges that Newman "conspired" with Fox, de'Medici, and Block to cause assets of the Soad Wattar Trust to be removed from the trust and transferred to Sharif's bankruptcy estate, and that those assets were being sought from the bankruptcy estate as attorney's fees in the domestic relations litigation.

Based on the above, Sharif's amended complaint raises RICO (Count I), negligence (Count III), and conspiracy (Count IV) claims against all Defendants, as well as a breach of fiduciary duty claim (Count II) against Fox, de'Medici, and Block.

Sharif's RICO claim incorporates the general allegations recounted above and further alleges that Defendants used the bankruptcy court proceeding as well as the domestic relations proceeding as an enterprise "to withdraw funds illegally" from the Soad Wattar Trust and South Barrington Property.

In his breach of fiduciary duty claim, Sharif alleges Fox, de'Medici, and Block breached their fiduciary duty owed to Sharif based on the conduct set forth above.

Sharif's negligence claim restates the general background allegations above and also alleges that Newman, Fox, and Fox's attorneys "failed to investigate or research" and engaged in "intentional acts of deception and misrepresentation to the courts" in violation of Illinois law, including filing pleadings seeking to recover attorney's fees from the aforementioned trust. Sharif does not specify how he was damaged as a result of the alleged negligence.

Sharif's conspiracy claim again merely incorporates the allegations of paragraphs 1-30 of the amended complaint and further alleges only that (a) "[t]he Defendants at various times as mentioned above, entered into an agreement to cooperate with each other in an effort to wrongfully obtain money that belongs to [Sharif's] family"; (b) "Defendants acted on their agreement by their abovementioned conduct"; and (c) as a result, Sharif was damaged.

Newman moved to dismiss the claims against him pursuant to Federal Rules of Civil Procedure 12(b)(1) and (b)(6), arguing the claims were subject to the domestic-relations exception to federal jurisdiction, Newman was absolutely immune from suit for his conduct as the court-appointed child's representative in the underlying domestic relations case, and the amended complaint failed to state a cognizable cause of action against Newman. The bankruptcy court granted Newman's motion to dismiss, dismissing all claims against Newman with prejudice. The bankruptcy court's order granting the motion to dismiss is the subject of the appeal in Case No. 21 C 1330.

Additional motions to dismiss the amended complaint filed by de'Medici and Block, Fox, Anderson, and Luma[2] were granted with prejudice because "Sharif's amended complaint is legally insufficient, devoid of grounds for recovery under all theories asserted." The bankruptcy court also granted Newman's motion for sanctions

---

[2] Block and de'Medici (joined by Fox) moved to dismiss under Rule 12(b)(6), arguing for dismissal based on quasi-judicial immunity and failure to state a claim; Anderson moved to dismiss under Rule 12(b)(1) based on the domestic relations exception and under 12(b)(6) for failure to state a claim; Luma moved to dismiss under Rule 12(b)(6) for failure to state a claim.

against Sharif and imposed additional sanctions under Bankruptcy Rule 9011. The sanctions and dismissal order is the subject of this appeal. *See* ECF No. 1-4.

## LEGAL STANDARD

On appeal from the bankruptcy court, the district court may "affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings." *Muhammad v. Bank of Am.*, 2016 WL 4720044, at *2 (N.D. Ill. 2016) (cleaned up). When a party appeals a bankruptcy court's order, the bankruptcy court's conclusions of law are reviewed under a *de novo* standard and its findings of fact are reviewed for clear error. *Freeland v. Enodis Corp.*, 540 F.3d 721, 729 (7th Cir. 2008). Therefore, this Court reviews *de novo* the dismissal of the amended complaint. *See N.W. Tissue Ctr. v. Shalala*, 1 F.3d 522, 527 (7th Cir. 1993).

Rule 12(b)(1) authorizes dismissal of claims over which the Court lacks subject matter jurisdiction. In analyzing such a motion to dismiss, the Court must accept as true all well-pled factual allegations and must draw all reasonable inferences in favor of the plaintiff. *Long v. Shorebank Dev. Corp.*, 182 F.3d 548, 554 (7th Cir. 1999). Further, "[t]he district court may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Id.* (citations omitted). The burden of establishing proper federal subject matter jurisdiction rests on the party asserting it. *Muscarello v. Ogle Cty. Bd. of Comm'rs*, 610 F.3d 416, 425 (7th Cir. 2010).

A motion to dismiss under Rule 12(b)(6) "tests the sufficiency of the complaint, not the merits of the case." *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 878 (7th Cir. 2012). The Court accepts as true well pled facts in the complaint and draws all reasonable inferences in favor of the plaintiff. *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011). The allegations in the complaint must set forth a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

A plaintiff need not provide detailed factual allegations, but it must provide enough factual support to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The claim must be described "in sufficient detail to give the defendant 'fair notice of what the . . . claim is and the grounds upon which it rests.'" *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient to withstand a Rule 12(b)(6) motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is facially plausible if the complaint contains sufficient alleged facts that allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.

Plaintiffs alleging fraud must do so with particularity. Fed. R. Civ. P. 9(b). When, as here, "predicate acts of racketeering involve fraud, the complaint must describe the 'who, what, when, where, and how' of the fraudulent activity to meet the

heightened pleading standard demanded by Rule 9(b)." *Muskegan Hotels, LLC v. Patel*, 986 F.3d 692, 698 (7th Cir. 2021) (quoting *Menzies v. Seyfarth Shaw LLP*, 943 F.3d 328, 338 (7th Cir. 2019)). When bringing RICO claims against multiple defendants, "Rule 9(b) requires a RICO plaintiff to plead sufficient facts to notify each defendant of his alleged participation in the scheme." *Goren v. New Vision Int'l, Inc.*, 156 F.3d 721, 726 (7th Cir. 1998).

## DISCUSSION

### I.      Count I: RICO Claim

We begin with Sharif's RICO claim. To state a claim under RICO, a plaintiff must allege: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Slaney v. The Int'l Amateur Athletic Fed.*, 244 F.3d 580, 597 (7th Cir. 2001). "A 'pattern' of racketeering activity consists of at least two predicate acts of racketeering (e.g., extortion, mail fraud) within ten years." *Nowicki v. Delao*, 506 F. App'x 514, 516 (7th Cir. 2013). The predicate acts of racketeering activity must be related and continuous. *Boneta v. Rolex Watch USA, Inc.*, 232 F. Supp. 3d 354, 358 (S.D.N.Y. 2017). Additionally, a plaintiff who claims to have been injured by reason of a RICO predicate offense has to show that the offense not only was a "but for" cause of his injury, but the proximate cause as well. *Hemi Gr., LLC v. City of New York*, 559 U.S. 1, 2–3 (2010).

RICO's definition of enterprise "has a wide reach." *Boyle v. U.S.*, 556 U.S. 938, 944 (2009). And "the very concept of an association in fact is expansive." *Id.* "[A]n

8

association-in-fact enterprise must have at least three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." *Id.* at 946. "The enterprise also must have 'a structure and goals separate from the predicate acts themselves.'" *Fund Recovery Servs., LLC v. RBC Cap. Mkts., LLC*, 2022 WL 142404, at \*10 (N.D. Ill. 2022) (quoting *U.S. v. Masters*, 924 F.2d 1362, 1367 (7th Cir. 1991)).

Despite the expansive nature of the definition, it is not limitless. *United Food and Comm. Workers Unions and Emps. Midwest Health Benefits Fund v. Walgreen Co.*, 719 F.3d 849, 853 (7th Cir. 2013). For example, "an employer and its employees cannot constitute a RICO enterprise." *Fitzgerald v. Chrysler Corp.*, 116 F.3d 225, 226 (7th Cir. 1997). And because "you cannot associate with yourself," *McCullough v. Suter*, 757 F.2d 142, 144 (7th Cir. 1985), a RICO plaintiff must "identify a 'person'—*i.e.,* the defendant—that is distinct from the RICO enterprise" and allege that person "conducted or participated in the conduct of the '*enterprise's* affairs' not just [its] own affairs," *Walgreen*, 719 F.3d at 853–54 (emphasis and alterations in original).

Sharif claims the "enterprise" here is the bankruptcy court and the divorce court but does not describe what makes the two courts an enterprise for RICO purposes. Furthermore, the amended complaint is rife with conclusory allegations that do not satisfy Rule 9(b)'s heightened pleading requirements. As the bankruptcy court aptly summarized:

9

> The amended complaint does not state with specificity what his estranged wife or the other Defendants did that warrants civil RICO liability. It alleges only conclusions: Fox schemed with Wellness to get the trust to be Richard's alter ego by default; Wellness claimed that Richard and his counsel failed to produce all the documents it requested and moved for default; his estranged wife and the child representative Arthur Newman (who allegedly abused his position in the divorce case by pressuring Richard and his family into settling the bankruptcy case and to accept their loss) and Defendant Jonathan Anderson, his wife's attorney, conspired with the other Defendants to deprive Sharif of his rights. These conclusions do not state what the Defendants did, when they did it or how their conduct satisfies the RICO predicate act and causation requirements, not to mention the requirement that there be at least two predicate acts that are related and continuous.

ECF No. 1-4, at 7–8. This Court could not have said it any better. What are the two predicate offenses? How were they the "but for" and "proximate cause" of Sharif's alleged injuries? What specifically did each Defendant do? How are the two courts an enterprise? Sharif's conclusory allegations doom his RICO claim.

Sharif's primary argument against dismissal of his RICO claim (and all of his other claims, for that matter) is that the complained of conduct occurred outside the scope of Defendants' duties and outside of the ongoing litigation. But the amended complaint is devoid of allegations that would permit such an inference.

## II.    Counts II and III: Breach of Fiduciary Duty and Negligence

In Count II, Sharif brings a breach of fiduciary duty claim against Fox, de'Medici, and Block, alleging they owed him a fiduciary duty as a debtor in the subject bankruptcy case. Count II incorporates the allegations from the facts section of the amended complaint and makes no further allegations.

10

Count III is a negligence claim against all Defendants. Count III also incorporates the amended complaint's facts section and further includes allegations that Defendants, with Luma's assistance, violated the Illinois Rules of Professional Conduct by making false statements to the courts and engaging in "dishonesty, fraud, deceit and misrepresentation by knowingly submitting to and filing false pleading and information to the courts."

To sustain a negligence claim, Sharif would have to show that each Defendant owed him a duty of care, each Defendant breached that duty, and an injury proximately caused by the breach. *Stevens v. McGuireWoods LLP*, 2015 IL 118652, ¶ 12. Sharif previously acknowledged in his briefing before the bankruptcy court that Luma does not owe him a duty and therefore cannot be held liable for negligence. Nor can Sharif establish Anderson owed him a duty because there is no attorney-client relationship. *See Donkle v. Lind*, 2018 IL App (1st) 171915, ¶¶ 32–33. The same is true for Fox, de'Medici, and Block. The negligence and breach of fiduciary duty claims against these Defendants fail for the additional reason that neither a trustee nor a trustee's counsel owes a fiduciary duty to the debtor. *See, e.g., In re New Concept Housing, Inc.*, 951 F.2d 932, 938 (8th Cir. 1991) (citing *In re Bashour,* 124 B.R. 52, 54 (Bankr. N.D. Ohio 1991) ("Trustees do not represent the debtor nor do they owe the debtor any fiduciary obligation")); *In re Gayety Candy Co., Inc.*, 625 B.R. 390, 404 (Bankr. N.D. Ill. 2021) ("a trustee in bankruptcy represents the interests of creditors and owes primary fiduciary duties to them.") (cleaned up).

### III.    Count IV: Conspiracy

In Count IV, Sharif alleges Defendants entered into an agreement to cooperate with each other in an effort to wrongfully obtain money that belongs to Sharif's family. Under Illinois law, "[c]ivil conspiracy is defined as a combination of two or more persons for the purpose of accomplishing by concerted action either an unlawful purpose or a lawful purpose by unlawful means." *McClure v. Owens Corning Fiberglas Corp.*, 188 Ill. 2d 102, 133 (1999) (quotation marks omitted); *see also Indep. Tr. Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 938–39 (7th Cir. 2012) (same). To state a civil conspiracy claim, "a plaintiff must allege an agreement and a tortious act committed in furtherance of that agreement." *McClure*, 188 Ill. 2d at 133; *see also Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 509 (7th Cir. 2007) (same). Simply stating Defendants conspired with each other, without more, does not make it so. Furthermore, "a conspiracy is not an independent tort. Where . . . a plaintiff fails to state an independent cause of action underlying its conspiracy allegations, the claim for a conspiracy also fails." *Horist v. Sudler & Co.*, 941 F.3d 274, 281 (7th Cir. 2019). Because Sharif has not adequately alleged any claims against any Defendant, Defendants cannot be held liable for civil conspiracy under Illinois law.

### IV.    Fox, de'Medici, and Block: Quasi-Judicial Immunity

The bankruptcy court also dismissed Sharif's claims against Fox and his counsel because, as the bankruptcy trustee, Fox is entitled to quasi-judicial absolute immunity. Indeed, a bankruptcy trustee "is entitled to quasi-judicial immunity for carrying out the

orders of the bankruptcy court." *Lerch v. Boyer,* 929 F. Supp. 319, 323 (N.D. Ind. 1996); *see also Henry v. Farmer City State Bank,* 808 F.2d 1228, 1238 (7th Cir.1986) ("Non-judicial officials whose official duties have an integral relationship with the judicial process are entitled to absolute immunity for their quasi-judicial conduct."). This immunity also applies to a trustee's counsel. *Henry*, 808 F.2d at 1238; *Hughes v. Miller*, 521 F. Supp. 3d 781, 789 (W.D. Wis. 2021). Despite Sharif's repeated claims to the contrary, there is nothing in the amended complaint to indicate Fox or his counsel were acting outside the scope of their authority.

Additionally, under what is known as the *Barton* doctrine, a plaintiff generally may not sue a private trustee or the trustee's attorney without first obtaining leave of the bankruptcy court, which Sharif neither sought nor obtained. *See Barton v. Barbour*, 104 U.S. 126 (1881); *Matter of Linton*, 136 F.3d 544, 545 (7th Cir. 1998). Moreover, a party seeking to sue a trustee must make out a prima facie case against the trustee, showing its claim is not without foundation. *In re Morris Senior Living*, 504 B.R. 490, 491 (Bankr. N.D. Ill. 2014), *aff'd sub nom. Morris Healthcare & Rehab. Ctr., LLC v. Berish (In re Morris Senior Living, LLC)*, 526 B.R. 750 (N.D. Ill. 2014). As discussed above, Sharif failed to state any cognizable claims in the amended complaint.

## V.    Absolute Litigation Privilege

Anderson also moved to dismiss the claims against him based on the absolute litigation privilege. The bankruptcy court found this defense "valid" because the privilege covers statements made outside of court as long as they are made during the

course and as part of a proceeding in which the attorney participates as counsel, if it is related to the proceeding, and Sharif failed to allege or describe a statement made outside of, not part of, or not related to a judicial proceeding. The lack of specificity in the amended complaint's allegations against Anderson leads this Court to the same conclusion. As pled in the amended complaint, any claims against Anderson based on any actions he took or statements he made occurred in connection with the domestic relations litigation and are barred by the absolute litigation privilege.

## VI.    Domestic Relations Exception

The bankruptcy court also found the domestic relations exception to federal jurisdiction applied to Sharif's claims against Fox, de'Medici, and Newman in paragraphs 22 through 25[3] of the amended complaint. The domestic relations exception was additionally found to be applicable to the allegations against Anderson and Luma.

The domestic relations exception "denies federal jurisdiction to grant a divorce or exercise the other characteristic powers of a domestic-relations court." *Jones v. Brennan*, 465 F.3d 304, 306 (7th Cir. 2006). The domestic relations exception to federal jurisdiction recognizes that state courts "have more experience in divorce, alimony, and child custody matters and are more closely associated with the state and local government organizations dedicated to handling such issues." *Dillon v. Alan H. Shifrin*

---

[3] Sharif complains in these paragraphs that Luma claimed in the divorce case that the Soad Wattar Trust and other properties were marital property, including the South Barrington Property. He alleges Luma conspired with Fox, de'Medici, Anderson, and Newman to obtain money from the trust which was part of the bankruptcy estate. Sharif also complains Anderson joined Newman and Luma to falsely assert Sharif owns various companies that belong to members of his family.

& *Assocs., LLC*, 2017 WL 2480706, at *3 (N.D. Ill. 2017) (citations omitted). In

*Friedlander v. Friedlander*, the Seventh Circuit held that the exception divests

jurisdiction not only from cases implicating "distinctive forms of relief" such as the

granting of a divorce or an annulment, an award of child custody, a decree of alimony

or child support, but also from a "penumbra" of cases implicating "ancillary

proceedings . . . that state law would require be litigated as a tail to the original domestic

relations proceeding." 149 F.3d 739, 740 (7th Cir. 1998).

The claims against Anderson and Luma, while sounding in tort, are inextricably

intertwined with the domestic relations litigation and therefore subject matter

jurisdiction over those claims is not appropriate. *See Kahn v. Kahn*, 21 F.3d 859, 860

(8th Cir. 1994) (ex-wife sued for breach of fiduciary duty, conversion, and fraud, but

court found that the claims, "although drafted to sound in tort," and thus independent

of the type of proceedings proscribed from federal subject matter jurisdiction by the

domestic relations exception, were "inextricably intertwined" with the prior divorce

proceeding). Thus, we agree with the bankruptcy court's conclusion that the claims

against Luma and Anderson are barred by the domestic relations exception to federal

jurisdiction. We are not similarly persuaded, however, by the conclusion that the claims

against Fox and de'Medici in paragraphs 22 through 25 are also barred by the exception.

The only allegation against Fox and de'Medici in these paragraphs is that Newman and

Luma conspired with Fox and de'Medici to obtain money from the Soad Wattar Trust,

15

which is part of the bankruptcy estate. Nevertheless, the claims against these Defendants fail for the reasons discussed above.

## VII. *Bivens* Claim

To the extent Sharif is attempting to raise a *Bivens* claim against Fox, de'Medici, and Block by alleging that these Defendants "are federal agents who were acting under the color of federal law" and used their positions to wrongfully seize the proceeds of the life insurance policy by falsely claiming it belonged to the bankruptcy court (Dkt. # 21, ¶ 29), such a claim fails. The *Bivens* doctrine provides an implied cause of action against federal officials who deprive plaintiffs of their constitutional rights. *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 399 (1971). The defendant must be a federal officer and must not have judicial immunity. *Lerch v. Boyer*, 929 F. Supp. 319, 323 (N.D. Ind. 1996). Chapter 7 trustees, however, are not federal officers; they merely represent bankruptcy estates and are entitled to quasi-judicial immunity. *In re Hughes Drilling Co.*, 75 B.R. 196, 197 (Bankr. W.D. Okla. 1987) ("The trustee is a representative of the estate, not an officer, agent, or instrumentality of the United States.").

## VIII. Sanctions Order

Finally, the bankruptcy court imposed sanctions against Sharif under Bankruptcy Rule 9011, which mirrors Federal Rule of Civil Procedure 11. "Abuse of discretion" is the "clear standard for evaluating a judge's decision to impose sanctions in a bankruptcy case." *In re Sokolik*, 635 F.3d 261, 269 n.2 (7th Cir. 2011) (citing *In re Rimsat, Ltd.*,

16

212 F.3d 1039, 1046 (7th Cir. 2000)).  An abuse of discretion occurs "only when a court has acted contrary to the law or reached an unreasonable result." *Id.* at 269.

The bankruptcy court found Sharif's amended complaint devoid of facts and law entitling him to relief as to any Defendant, and noted Sharif is causing the bankruptcy estate and other parties to incur unnecessary litigation costs.  Additionally, the bankruptcy court concluded that Sharif has asserted groundless claims after adverse judgments had resolved them, and his purpose in pursuing Civil Action 19-cv-6035 was to harass his opponents and cause them to incur unnecessary expenses.  Accordingly, this conduct, in addition to Sharif's misstatements of the law and the facts, warranted the imposition of Rule 9011 sanctions against Sharif.

The bankruptcy court fined Sharif $20,000 and barred him from ever filing in or about Bankruptcy Case No. 09-5868, or its related adversary proceedings, without prior leave of court.  The bankruptcy court further barred Sharif from suing any person or entity for their conduct in connection with Bankruptcy Case No. 09-5868 or the adversary proceedings filed therein.  We find these sanctions reasonable and not contrary to the law.  Accordingly, the bankruptcy court did not abuse its discretion in the imposition of the Rule 9011 sanctions.

Additionally, the bankruptcy court granted Newman's motion for sanctions, agreeing with Newman's assertion that Sharif's claims are barred by the domestic relations exception to federal jurisdiction and that the claims do not present a good faith argument for the extension, modification, or reversal of existing law.  The bankruptcy

17

court further noted that Sharif did not take advantage of the safe harbor provision of Bankruptcy Rule 9011(c)(1). As a result of granting Newman's motion, the bankruptcy court ordered Sharif to pay Newman's attorneys' fees and expenses incurred in responding to Civil Action 19-cv-6935/Adversary Proceeding 20-00399. We find no abuse of discretion in the imposition of this sanction either.

## CONCLUSION

For the foregoing reasons, the decision of the bankruptcy court dismissing Sharif's amended adversary complaint and imposing sanctions is affirmed. The Clerk is directed to enter judgment affirming the decision of the bankruptcy court. Civil case terminated. It is so ordered.

Dated: October 11, 2022

Charles P. Kocoras
United States District Judge